## In re GOSMANN.

### Patent Appeal No. 4537.

Court of Customs and Patent Appeals.

Dec. 29, 1941.

Edgar W. Adams, M. R. McKenney, and P. C. Smith, all of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Mackey, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United State Patent Office affirming the decision of the Primary Examiner rejecting claims 5 and 11 to 14, inclusive, in appellant's application for a patent for an invention relating to an automatic telephone system.

Claims 5 and 13, of which claim 13 is illustrative, are apparatus claims, and claims 11, 12, and 14, of which claim 14 is illustrative, are method claims.

Claims 13 and 14 read:

"13. In a telephone system, a calling station and a called station, a plurality of band-pass filters, each of said filters being resonant to a fundamental frequency of a spoken word, switching apparatus adapted to connect said calling station with said called station, a gas-filled tube in the output of each filter, relays operable by the response of said gas-filled tubes, circuits selectively established by the operation of said relays, and registering means operable over said circuits when said filters respond to spoken words characteristic of the digits of telephone designations to control said switching apparatus.

"14. The method of establishing a connection between two telephone stations which consists in speaking into the transmitter at one of said stations the elements of the directory number of a desired station thereby generating complex undulating electric currents corresponding to said spoken elements, electrically amplifying and

detecting the electric currents corresponding to each spoken element, making a registration of each spoken element in response to the detection of the corresponding currents thereof, and controlling the operation of switching mechanism by said registrations to establish a connection from the calling station to the station whose directory number has been spoken."

Claim 4, a method claim, and claims 6, 8, 9, and 10, apparatus claims, were allowed by the Primary Examiner.

The references are:

Blattner, 1,654,068, Dec. 27, 1927; Raymond et al., 1,862,549, June 14, 1932.

In certain localities telephone systems are used wherein connections are established by means of automatic operating switches without the aid of telephone operators. These systems, for the purpose of this decision, may be referred to as dial systems. Such a system is disclosed in the reference patent to Raymond et al.

In appellant's telephone system, the dial and the apparatus necessary to its functioning are eliminated and, in order to initiate a call, it is only necessary for the calling subscriber to remove the telephone transmitter from the switch hook and speak into it the desired "telephone number." So that he might accomplish his purpose, appellant took advantage of certain prior-art knowledge. With regard to such knowledge, appellant states in his application that

"The phenomena of sound, and particularly of the sound waves produced by the vocal cords and transmitted through the vocal passages, has been the subject of many thoroughgoing scientific investigations which have established the fact that speech sound waves initiated by the vocal cords have certain resonant characteristics impressed upon them which causes them to be distinguished from one another as words or parts of words. According to Dr. H. Fletcher's text 'Speech and Hearing' the spoken sounds of the English language can be classified into 39 speech sounds readily distinguished by the average person * * *.

"Since words are composed of the fundamental sounds * * *, a study of the physical characteristics of these sounds makes it possible to recognize different words by their sound frequency spectra. * * * This fact has been made use of in the analysis of sound by causing the sound energy to be changed into an undulating electric current which varies exactly in accordance with the sound impressed. This electric current is then passed through a plurality of selective filter networks, each responsive only to a narrow band of frequencies. At those frequencies of tuning which coincide with the component of frequencies of the sound wave, the response of the electric devices connected to each of the filters will be a maximum."

Appellant further states in his application that

"*It is this fundamental relation between sound energy and equivalent electrical energy which forms the basis of the present invention.* Ordinarily, in automatic telephony, selective switches are operated in response to groups of impulses produced by a dial at the subscriber's substation. These impulses either actuate the switches directly, in which case the switches take a number of steps equal to the number of impulses, or they actuate registering devices to record the wanted number, in which case the devices selectively control the operation of a number of switches to reach the desired line. In my invention, the dial at the telephone station is eliminated and the subscriber, upon initiating a call, transmits the office and number of the wanted line by pronouncing the same in the telephone transmitter in the same way as he would if he were calling from a manual station.

"*The register relays at the central office which control the selective movement of the line-extension switches, instead of being set in response to the impulses of a dialed number, are now set in response to the operation of band-pass filters each of which is tuned to maximum resonance for a particular frequency that characterizes a vowel or consonant in the electrical alphabet.* These relays are then locked to control the selective operation of the switches that reach the wanted line and the extent of their movement is, of course, determined by the combination of relays so locked and the selective circuits that can be controlled thereover, all in accordance with well-known automatic telephone practices." (Italics ours.)

Appellant further states in his application that in his system each tuned band-filter is so adjusted that only certain bands of frequencies can pass, the others being completely suppressed, and that, by means of gas-filled tubes, those that pass control

the operation of the relays associated with each filter.

Appellant has also provided his apparatus with certain digit relays, ten in number, which register the digits from 0 to 9, inclusive. These relays are controlled by different combinations of the control relays associated with the filters. For example, when some of the control relays operate in response to the speaking of a word which corresponds to one of the digits, the circuit of one of the digit relays is completed. Then if another word, for example the word "three" which corresponds to the digit 3, is spoken, other control relays operating in response to the speaking of that word into the transmitter complete the circuit of another digit relay. Such operation is explained in appellant's application as follows: "By the suitable wiring of the contacts controlled by these [the control] relays a corresponding one of the ten digit relays * * * is operated and locked to ground at the back contact of [the] relay * * * in the selector control apparatus."

It is also stated in appellant's application that "by grounding one to three of a set of five conductors extending to the control apparatus" the digit relays selectively operate the relays of the selector control apparatus.

It may be said at this point that it is conceded in appellant's application that the selector control apparatus (including the switching apparatus which connects the calling line to the line being called) and its operation are disclosed in the reference patent to Raymond et al.

The patent to Blattner relates to an apparatus for the *visual* interpretation of speech and music with the aid of electrical illumination. The patentee states that "A related object of the invention is to *produce lighting effects* which blend in harmony with the articulate sounds produced by a phonograph or other sound reproducing system." (Italics ours.) The means provided by the patentee is for the purpose of "accentuating the artistic effect produced by musical and other programs *whose themes suggest various degrees of light and color.*" (Italics not quoted.) The patentee discloses a phonograph reproducing system including a loud speaker. A plurality of "channels including wave filters * * * are associated with the circuit" in the phonograph reproducing system and are designed, as in general are appellant's tuned band-filters, to pass certain bands of frequencies and to suppress others. The output sides of the wave filters are coupled to amplifying detectors of the space-discharge type having incandescent lamps connected in their output circuits. The patentee provides a generator and a rectifier as a source of "space current and filament heating current" for amplifying the detectors and to supply energy to the lamps, and an auxiliary circuit for lighting the lamps to a pre-determined minimum brilliancy before and without regard to the transmission of current or energy from the circuit in the phonograph reproducing system. In the operation of the patentee's apparatus, a portion of the energy in the circuit in the phonograph reproducing system is transmitted by the wave filters "to the input circuits of the respective detectors, depending upon the frequency and intensity of the transmitted energy," causing an increase in the current in the associated output circuits and thus lighting the lamps to a brilliancy depending upon the energy transmitted to them. One of the lamps in the patentee's apparatus may be colored red, another green, and another blue, such colors being arbitrarily associated with the various frequency bands. The patentee further states that a greater variety of colors might be obtained by employing a greater number of wave filters and different colored lamps.

The Primary Examiner rejected each of the appealed claims on the patent to Blattner in view of the patent to Raymond et al., stating in his decision that it would not involve invention "to substitute a microphone for the reproducer [in the phonograph reproducing system] * * * and relays for the lamps" disclosed in the patent to Blattner. The examiner further stated that "The operation of one or a combination of these relays [the relays substituted for the lamps in the Blattner disclosure] *could* be used to operate the register shown by the patent to Raymond et al. *The patent to Raymond et al. discloses a register which is used to control the switches in the extension of a telephone system.*" (Italics ours.) With reference to appealed claim 5, the examiner said: "This claim reads upon the references in the following manner: the microphone substituted for the reproducer * * * is the means for generating undulating current corresponding to sound undulations; the means associable with the calling station and responsive to said undulating cur-

rent for separating said current into component currents of fundamental frequencies are the filters * * *; and the means responsive to said component currents for controlling the automatic selection of said called station are the relays substituted for the lamps * * *, and the register set forth in Raymond et al." With reference to appealed claims 11, 12, and 14, the examiner said: "The limitation 'making · a record of each fundamental frequency' appearing in claims 11 and 12 and the limitation 'making a registration of each spoken element' appearing in claim 14 are considered to be the operation of one or more of the relays substituted for [the] lamps" disclosed in the patent to Blattner. With reference to claim 13, the examiner said that "The gas-filled tubes * * * of Blattner are considered to be the full equivalent of applicant's gas-filled tubes. The operation of a gas-filled tube * * * is necessary to operate a relay which has been substituted [in appellant's apparatus] for the lamps" in the Blattner disclosure.

In its decision affirming the decision of the Primary Examiner, the Board of Appeals stated that the *basic principle* of resolving spoken words and numerals into elemental sound frequencies and the fact that such frequencies predominate in "different quantity and combinations in different words and numbers and may be utilized by proper selection of selective filters to *actuate automatic mechanism to select a called station*" in an automatic telephone system is disclosed in the reference patent to Blattner (italics not quoted), although, the board stated, the patentee employed such basic principle in a different situation and for a different purpose. We quote from the board's decision:

"It appears that the question of invention is merely that of whether in view of the disclosure of the basic principle of resolving sound into component elements and causing response of a group of filters to the predominate elements to operate a device, that any invention is involved in associating it with other apparatus to be operated. *The several output circuits of Blattner could obviously be connected with any apparatus having a plurality of relay actuated switches and obviously might be associated with the operating relays of an automatic selector although in such case one would have to adjust the filters to correspond with the necessary frequencies to indicate a called station rather than to operate colored lights.* It is believed that in-

vention is not involved in this broad conception, the only problem being merely to determine by test whether speech can be analyzed with sufficient accuracy to represent practical telephone work. However, it might be assumed that a very limited number of telephones would be called. If for instance only three phones were to be in the group to be called they could be directly connected to the three outputs of Blattner's system and the filters adjusted to be responsive to such calling tones." (Italics not quoted.)

Counsel for appellant state in their brief that, in addition to the substitution of a telephone transmitter for the reproducer in the phonographic reproducing system disclosed in the patent to Blattner, appellant has provided band-pass filters, "control relays," and "digit relays" to replace the equipment disclosed in the Raymond et al. patent which counts and records the impulses of each digit dialed, and that appellant's digit relays control the operation of the Raymond et al. digit storing registers. (Those statements are not questioned by the Solicitor for the Patent Office.) Counsel further state that appellant's arrangement is neither disclosed nor suggested in the prior art and, therefore, involves invention.

In its decision, the Board of Appeals stated that, although it would be necessary to "adjust the filters [in the Blattner patent] to correspond with the necessary frequencies to indicate a called station rather than to operate colored lights," it was obvious that the output circuits disclosed by Blattner could "be connected with any apparatus having a plurality of relay actuated switches" including "the operating relays of an automatic selector" used in the Raymond et al. automatic telephone system. The board also stated that the only problem involved was to "determine by *test* whether speech" could "be analyzed with sufficient accuracy to represent practical telephone work." (Italics not quoted.)

The board did not explain why, in its opinion, it would be obvious that the output circuits disclosed in the patent to Blattner could, by experimentation, be connected so as to operate the selector control apparatus in the Raymond et al. patent. The board, of course, realized that once having the broad idea of operating an automatic telephone system by speaking into a telephone transmitter, neither disclosed · nor suggested by the prior art, rather than by using the dial and the necessary relays in-

volved in its operation, it would. be necessary to adjust the filters disclosed in the patent to Blattner to correspond to the frequencies necessary to indicate the letters and digits used in a telephone system, and that it would also be necessary to determine whether such letters and digits could be so analyzed and the filters so adjusted that the system would be practical and would operate successfully. It may be observed in this connection that the patent.to Blattner issued approximately five and one-half years before the issuance of the patent to Raymond et al., and that it evidently did not occur to the patentees Raymond et al. that the Blattner disclosure might be utilized in an automatic telephone system. Furthermore, so far as we are aware, it was not until the filing of appellant's application, ten years after the issuance of the Blattner patent and five years after the issuance of the patent to Raymond et al., that it was discovered that a system such as that defined by the appealed claims had practical utility. Now that appellant has shown the way, his apparatus and the principle of its operation seem simple.

That the automatic telephone system claimed by appellant is novel and that it has practical utility, is not questioned by the tribunals of the Patent Office. We are of opinion, therefore, that, on the record presented, appellant's structure, as defined by appealed claims 5 and 13, and the method, as defined by appealed claims 11, 12, and 14, involve invention.

For the reasons stated, the decision of the Board of Appeals is reversed.

Reversed.